1
2
3
4
5
6

Robert Drexler (SBN 119119)
Robert.Drexler@CapstoneLawyers.com
Molly DeSario (SBN 230763)
Molly.DeSario@CapstoneLawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee@CapstoneLawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

7

Attorneys for Plaintiff Suavecita Bernal

8

9

UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12
13

SUAVECITA BERNAL, individually, and
on behalf of other members of the general
public similarly situated,

14

Plaintiff,

15

vs.

16
17
18
19
20
21

GRAHAM PACKAGING PET
TECHNOLOGIES INC., a Delaware
corporation; GRAHAM PACKAGING
COMPANY, L.P., a Delaware limited
partnership; GRAHAM PACKAGING
COMPANY, INC., a Delaware corporation;
GEC PACKAGING TECHNOLOGIES
LLC, a Delaware limited liability company;
and DOES 1 through 10, inclusive,

Defendants.

Case No.:  1:20-CV-01045-AWI-EPG

**FIRST AMENDED CLASS ACTION
COMPLAINT & ENFORCEMENT
ACTION UNDER THE PRIVATE
ATTORNEYS GENERAL ACT,
CALIFORNIA LABOR CODE §§ 2698, *ET
SEQ.***

(1) Violation of California Labor Code §§ 510
    and 1198 (Unpaid Overtime);
(2) Violation of California Labor Code
    §§ 1182.12, 1194, 1197, 1197.1, and 1198
    (Unpaid Minimum Wages);
(3) Violation of California Labor Code
    §§ 226.7, 512(a), 516, and 1198 (Failure to
    Provide Meal Periods);
(4) Violation of California Labor Code
    §§ 226.7, 516, and 1198 (Failure to
    Authorize and Permit Rest Periods);
(5) Violation of California Labor Code
    §§ 226(a), 1174(d), and 1198 (Non-
    Compliant Wage Statements and Failure to
    Maintain Payroll Records);
(6) Violation of California Labor Code §§ 201
    and 202 (Wages Not Timely Paid Upon
    Termination);
(7) Violation of California Labor Code § 204
    (Failure to Timely Pay Wages During
    Employment);
(8) Violation of California Labor Code § 2802
    (Unreimbursed Business Expenses);
(9) Civil Penalties for Violations of California

22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;
(10)   Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and
(11)   Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

1  Plaintiff Suavecita Bernal, individually and on behalf of all other members of the

2  public similarly situated and as an aggrieved employee and on behalf of all other aggrieved

3  employees, alleges as follows:

4  **JURISDICTION AND VENUE**

5  1.  This class action is brought pursuant to Rule 23 of the Federal Rules of Civil

6  Procedure to recover wages and all other available relief on behalf of Plaintiff and all

7  similarly situated current and former non-exempt, hourly paid employees of Defendants, and a

8  non-class representative enforcement action brought pursuant to the Labor Code Private

9  Attorneys General Act of 2004, California Labor Code sections 2698, *et seq.* ("PAGA") to

10  recover civil penalties and any other available relief on behalf of Plaintiff, the State of

11  California, and other current and former employees who worked for Defendants in California

12  as non-exempt, hourly paid employees and received at least one wage statement and against

13  whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor

14  Code or any provision regulating hours and days of work in the applicable Industrial Welfare

15  Commission ("IWC") Wage Order were committed, as set forth in this complaint.  The

16  monetary damages, penalties, and restitution sought by Plaintiff exceed the minimal

17  jurisdiction limits of the Superior Court and will be established according to proof at trial.

18  This Court has jurisdiction over this action pursuant to the California Constitution, Article VI,

19  section 10.  The statutes under which this action is brought do not specify any other basis for

20  jurisdiction.  Plaintiff's share of damages, penalties, and other relief sought in this action does

21  not exceed $75,000.

22  2.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §

23  1332(d) and based on 28 U.S.C. §§ 1441, 1446.

24  3.  Venue is proper in this Court because this case was originally filed in the

25  Superior Court of California for the County of Stanislaus.  Venue properly lies in the United

26  States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(a),

27  1391(b) and 1441(a).  The PAGA statute authorizes aggrieved employees to sue directly as the

28  proxy of the State of California for civil penalties for violations of various provisions in the

1  California Labor Code..

2  **THE PARTIES**

3  4.  Plaintiff Suavecita Bernal is a resident of Turlock, in Stanislaus County,

4  California.  Defendants employed Plaintiff as an hourly paid, non-exempt Packaging

5  Specialist from approximately August to October 2019.  Plaintiff worked for Defendants at

6  their location in Modesto, California.  During her employment, Plaintiff typically worked

7  eight (8) hours or more per day, and five (5) days per week.  Plaintiff's primary job duties

8  included, without limitation, operating heavy machinery, handling defective packaging,

9  assembling and stacking packages, cleaning and maintaining machines, and logging and

10  reporting containers.

11  5.  GRAHAM PACKAGING PET TECHNOLOGIES INC. was and is, upon

12  information and belief, a Delaware corporation, and at all times hereinafter mentioned, an

13  employer whose employees are engaged throughout this county, the State of California, or the

14  various states of the United States of America.

15  6.  GRAHAM PACKAGING COMPANY, L.P. was and is, upon information and

16  belief, a Delaware limited partnership, and at all times hereinafter mentioned, an employer

17  whose employees are engaged throughout this county, the State of California, or the various

18  states of the United States of America.

19  7.  GRAHAM PACKAGING COMPANY, INC. was and is, upon information and

20  belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose

21  employees are engaged throughout this county, the State of California, or the various states of

22  the United States of America.

23  8.  GEC PACKAGING TECHNOLOGIES LLC was and is, upon information and

24  belief, a Delaware limited liability company, and at all times hereinafter mentioned, an

25  employer whose employees are engaged throughout this county, the State of California, or the

26  various states of the United States of America.

27  9.  Plaintiff is unaware of the true names or capacities of the Defendants sued

28  herein under the fictitious names DOES 1 through 10, but will seek leave of this Court to

FIRST AMENDED CLASS ACTION COMPLAINT

amend the complaint and serve such fictitiously named Defendants once their names and capacities become known.

10.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, or managers of GRAHAM PACKAGING PET TECHNOLOGIES INC.; GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; and GEC PACKAGING TECHNOLOGIES LLC at all relevant times.

11.    Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, GRAHAM PACKAGING PET TECHNOLOGIES INC.; GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; GEC PACKAGING TECHNOLOGIES LLC; and/or DOES 1 through 10 (collectively, "Defendants" or "GRAHAM PACKAGING"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

12.    At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

13.    Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

14.    Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members. Each Defendant had the power to hire and fire Plaintiff and class members, supervised and

1  controlled their work schedule and/or conditions of employment, determined their rate of pay,

2  and maintained their employment records.  Defendants suffered or permitted Plaintiff and

3  class members to work and/or "engaged" Plaintiff and class members so as to create a

4  common-law employment relationship.  As joint employers of Plaintiff and class members,

5  Defendants are jointly and severally liable for the civil penalties and all other relief available

6  to Plaintiff and class members under the law.

7      15.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times,

8  Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class

9  members because Defendants have:

10          (a)    jointly exercised meaningful control over the work performed by

11                 Plaintiff and class members;

12          (b)    jointly exercised meaningful control over Plaintiff's and class members'

13                 wages, hours, and working conditions, including the quantity, quality

14                 standards, speed, scheduling, and operative details of the tasks

15                 performed by Plaintiff and class members;

16          (c)    jointly required that Plaintiff and class members perform work which is

17                 an integral part of Defendants' businesses; and

18          (d)    jointly exercised control over Plaintiff and class members as a matter of

19                 economic reality in that Plaintiff and class members were dependent on

20                 Defendants, who shared the power to set the wages of Plaintiff and class

21                 members and determined their working conditions, and who jointly

22                 reaped the benefits from the underpayment of their wages and

23                 noncompliance with other statutory provisions governing their

24                 employment.

25      16.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times

26  there has existed a unity of interest and ownership between Defendants such that any

27  individuality and separateness between the entities has ceased.

28      17.    GRAHAM PACKAGING PET TECHNOLOGIES INC.; GRAHAM

PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; GEC PACKAGING TECHNOLOGIES LLC; and DOES 1 through 10 are therefore alter egos of each other.

18.    Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name GRAHAM PACKAGING.

19.    Plaintiff further alleges, upon information and belief, that Defendants GRAHAM PACKAGING PET TECHNOLOGIES INC.; GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; and GEC PACKAGING TECHNOLOGIES LLC are alter egos of each other for the following reasons:

(a)    On the California Secretary of State's website (https://businesssearch.sos.ca.gov/), GRAHAM PACKAGING PET TECHNOLOGIES INC. and GRAHAM PACKAGING COMPANY, L.P. share the same entity address and mailing address, "700 INDIAN SPRINGS DR STE 100, LANCASTER PA 17601;"

(b)    On information and belief, GEC PACKAGING TECHNOLOGIES LLC is the parent company of GRAHAM PACKAGING COMPANY, INC., and GEC PACKAGING TECHNOLOGIES LLC is identified as an "affiliated" company of GRAHAM PACKAGING COMPANY, L.P. in Defendants' employment documents provided to Plaintiff and class members;

(c)    On information and belief, GRAHAM PACKAGING PET TECHNOLOGIES INC.; GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; and GEC PACKAGING TECHNOLOGIES LLC share the same agent for service of process, "CORPORATION SERVICE COMPANY;" and

(d)    On information and belief, GRAHAM PACKAGING PET

TECHNOLOGIES INC.; GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; and GEC PACKAGING TECHNOLOGIES LLC utilize the same standardized employment forms and issue the same employment policies.

**GENERAL ALLEGATIONS**

20.     Defendants are a global manufacturer of customizable packaging solutions. Defendants operate several manufacturing plants in California.  Upon information and belief, Defendants maintain a single, centralized Human Resources ("HR") department at their company headquarters in Lancaster, Pennsylvania, which is responsible for the recruiting and hiring of new employees, and communicating and implementing Defendants' company-wide policies, including timekeeping policies and meal and rest period policies, to employees throughout California.

21.     In particular, Plaintiff and class members, on information and belief, received the same standardized documents and/or written policies.  Upon information and belief, the usage of standardized documents and/or written policies, including new-hire documents, indicate that Defendants dictated policies at the corporate level and implemented them company-wide, regardless of their employees' assigned locations or positions.  Upon information and belief, Defendants set forth uniform policies and procedures in several documents provided at an employee's time of hire, including, but not limited to, Offer of Employment, Plant Safety Agreement, and Employee Handbook.

22.     Upon information and belief, Defendants maintain a centralized Payroll department at their company headquarters in Lancaster, Pennsylvania, which processes payroll for all non-exempt, hourly paid employees working for Defendants at their various locations and jobsites in California, including Plaintiff and class members.  Based upon information and belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid employees in California, irrespective of their work locations.  Upon information and belief, Defendants process payroll for departing employees in the same manner throughout the State of California, regardless of the manner in which each employee's employment ends.

23.    Defendants continue to employ non-exempt or hourly paid employees in California.

24.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers and other professionals, employees and advisors knowledgeable about California labor and wage law, employment and personnel practices, and about the requirements of California law.

25.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

26.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

27.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

28.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the Labor Code or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

29.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and

permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, within permissible time periods.

33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, within permissible time periods.

34.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that Defendants knew or should have known that they had a duty to cover the costs

FIRST AMENDED CLASS ACTION COMPLAINT

and expenses Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug tests, but willfully, knowingly, and intentionally failed to do so.

35.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive itemized wage statements or separate written statements showing the amount of paid sick leave available, or paid time off provided in lieu of sick leave.  In violation of the California Labor Code, Defendants failed to provide Plaintiff and class members with written itemized wage statements or separate written statements showing this information.

36.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain, for Plaintiff and/or class members, a temperature in work areas that provided reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed, and to take all feasible means to reduce excessive heat or humidity to a degree providing reasonable comfort, but failed to do so.

37.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive full reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment and that they did not receive full reimbursement of applicable business-related expenses and costs incurred.

38.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to provide Plaintiff and class members with safety devices and safeguards, such as personal protective equipment, to protect their life, safety, and health in the workplace, but willfully, knowingly, and intentionally failed to do so.

39.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and

falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

**PAGA REPRESENTATIVE ALLEGATIONS**

40.    At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on behalf of themselves and other current or former employees pursuant to procedures outlined in California Labor Code section 2699.3.

41.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

42.    Plaintiff and other current and former employees of Defendants are "aggrieved employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current or former employees and one or more of the alleged violations were committed against them.

43.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

        (a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violation.

        (b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(a) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

        (c)    The LWDA shall notify the employer and the aggrieved employee or representative by certified mail that it does not intend to investigate the

alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

44.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)    The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

45.    On July 10, 2020, Plaintiff provided written notice by online filing to the

FIRST AMENDED CLASS ACTION COMPLAINT

LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3. Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75). The LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-796412-20. A true and correct copy of Plaintiff's written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

46.     As of the filing date of this complaint, over 65 days have passed since Plaintiff sent the notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

47.     Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

48.     Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

49.     Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

50.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage

1  Order.

2      51.    Pursuant to PAGA, and in particular, California Labor Code sections 2699(a),

3  2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiff, acting in the public interest as a

4  private attorney general, seeks assessment and collection of civil penalties for herself, all other

5  aggrieved employees, and the State of California against Defendants for violations of

6  California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a),

7  516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

8                           **CLASS ACTION ALLEGATIONS**

9      52.    Plaintiff brings this action on her own behalf, as well as on behalf of each and

10  all other persons similarly situated, and thus seeks class certification under Rule 23 of the

11  Federal Rules of Civil Procedure.

12      53.    All claims alleged herein arise under California law for which Plaintiff seeks

13  relief authorized by California law.

14      54.    Plaintiff's proposed class consists of and is defined as follows:

15          All persons who worked for Defendants as non-exempt, hourly
            paid employees in California, within four years prior to the filing
16          of the initial complaint until the date of trial ("Class").

17      55.    Plaintiff's proposed subclass consists of and is defined as follows:

18          All persons who worked for Defendants as non-exempt, hourly
            paid employees in California and who received at least one wage
19          statement within one (1) year prior to the filing of the initial
            complaint until the date of trial ("Subclass").
20

21      56.    Members of the Class and Subclass are referred to herein as "class members."

22      57.    Plaintiff reserves the right to redefine the Class and Subclass and to add

23  additional subclasses as appropriate based on further investigation, discovery, and specific

24  theories of liability.

25      58.    This action is brought and properly may be maintained as a class action

26  pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1),

27  (b)(2), or (b)(3) and satisfies the requirements thereof.

28      59.    According to Defendants' removal papers, there are at least 282 non-exempt,

hourly paid employees working for Defendants across California during the relevant period. Thus, it is reasonable to presume that the members of the class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

60. Plaintiff's claims are typical of those of the class members, because Plaintiff suffered the violations set forth in this First Amended Complaint.

61. Plaintiff will adequately protect the interests of class members. Plaintiff has no interests that are adverse to or conflict with class members and is committed to the vigorous prosecution of this action. To that end, Plaintiff has retained counsel who is competent and experienced in handling class actions on behalf of employees.

62. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the amount suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this case as a class action.

63. There are common questions of law and fact as to class members that predominate over questions affecting only individual members, including, but not limited to:

  (a) Whether Defendants required Plaintiff and class members to work over eight (8) hours per day, over twelve (12) hours per day, or over forty (40) hours per week and failed to pay all legally required overtime compensation to Plaintiff and class members;

  (b) Whether Defendants failed to pay Plaintiff and class members at least minimum wages for all hours worked;

  (c) Whether Defendants failed to provide Plaintiff and class members with meal periods;

  (d) Whether Defendants failed to authorize and permit Plaintiff and class members to take rest periods;

(e)  Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(f)  Whether Defendants maintained accurate payroll records as required by California Labor Code section 1174(d);

(g)  Whether Defendants failed to pay earned overtime wages, minimum wages, and meal and rest period premium wages due to Plaintiff and class members upon their discharge;

(h)  Whether Defendants failed timely to pay overtime wages, minimum wages, and meal and rest period premium wages to Plaintiff and class members during their employment;

(i)  Whether Defendants failed to pay Plaintiff and class members for the costs of mandatory physical examinations and/or drug testing;

(j)  Whether Defendants failed to provide Plaintiff and class members with written notice on wage statements listing requisite sick pay information set forth in Labor Code section 246(i);

(k)  Whether Defendants failed to maintain for Plaintiff and/or class members a temperature in work areas that provided reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed, and to take all feasible means to reduce excessive heat or humidity to a degree providing reasonable comfort;

(l)  Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(m)  Whether Defendants failed to provide Plaintiff and class members with safety devices and safeguards, such as personal protective equipment;

(n)  Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200,

1       *et seq.*; and

2       (o)    The appropriate amount of damages, restitution, or monetary penalties

3              resulting from Defendants' violations of California law.

4                          **FIRST CAUSE OF ACTION**

5       **Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

6                          **(Against all Defendants)**

7       64.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

8       and every allegation set forth above.

9       65.    Labor Code section 1198 makes it illegal to employ an employee under

10      conditions of labor that are prohibited by the applicable wage order.  California Labor Code

11      section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall

12      be the . . . standard conditions of labor for employees.  The employment of any employee . . .

13      under conditions of labor prohibited by the order is unlawful."

14      66.    California Labor Code section 1198 and the applicable IWC Wage Order

15      provide that it is unlawful to employ persons without compensating them at a rate of pay

16      either time-and-one-half or two-times that person's regular rate of pay, depending on the

17      number of hours worked by the person on a daily or weekly basis.

18      67.    Specifically, the applicable IWC Wage Order provides that Defendants are and

19      were required to pay Plaintiff and class members working more than eight (8) hours in a day

20      or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all

21      hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a

22      workweek.

23      68.    The applicable IWC Wage Order further provides that Defendants are and were

24      required to pay Plaintiff and class members working more than twelve (12) hours in a day,

25      overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's

26      regular rate of pay includes all remuneration for employment paid to, or on behalf of, the

27      employee, including nondiscretionary bonuses and incentive pay.

28      69.    California Labor Code section 510 codifies the right to overtime compensation

at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

70.    During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

71.    First, during the relevant period, Defendants had a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out times in their timekeeping system to the nearest tenth (0.1) of an hour.  Defendants' rounding policy resulted in the failure to compensate Plaintiff and class members fully for all hours worked, causing Plaintiff and class members to not be paid overtime wages for all of the overtime hours they actually worked.  Defendants' policy of rounding is unfair and has, over time, resulted in the underpayment of wages to Plaintiff and class members.  To the extent Defendants' rounding policy has taken away time worked that was eligible for overtime, Plaintiff and class members were denied overtime pay for all hours worked.

72.    Second, Defendants had a company-wide practice and/or policy of requiring Plaintiff and class members to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system.  For example, Plaintiff and class members were required to attend mandatory meetings lasting 5-10 minutes prior to their shifts, but were prevented from clocking in until their scheduled shift start-time, upon threat of discipline.  Plaintiff would report to work 10 minutes prior to the start of her scheduled shift, but was not permitted to clock in until her scheduled shift start-time, after the meeting was completed.  Additionally, Defendants required Plaintiff and class members to attend off-site training sessions, such as new-hire orientations, but did not compensate them

1  for their time spent traveling to these training sessions. For example, after clocking out,

2  Plaintiff spent an hour traveling to another one of Defendants' plants to attend new-hire

3  orientation, attend training sessions, or complete paperwork. Thus, Defendants failed to track

4  all of this time spent working before clocking in or after clocking out, and Plaintiff and class

5  members received no compensation for this time.

6      73.    Third, during the relevant period, Defendants had, and continue to have, a

7  company-wide policy and/or practice of understaffing their worksites while assigning heavy

8  workloads, resulting in a failure to provide Plaintiff and class members with adequate meal

9  period coverage. As a result of this lack of meal period coverage, Plaintiff and class members

10  were not always afforded uninterrupted 30-minute meal periods during shifts when they were

11  entitled to receive a meal period. For example, Plaintiff and class members would have their

12  meal periods interrupted to complete such work-related tasks as responding to questions about

13  job duties from coworkers. Thus, Plaintiff and class members missed and/or had meal periods

14  interrupted in order to complete their assigned workloads. Defendants did not pay Plaintiff

15  and class members for the time they continued to perform tasks during meal periods.

16      74.    Defendants knew or should have known that as a result of these company-wide

17  practices and/or policies, Plaintiff and class members were performing their assigned duties

18  off-the-clock before and after their shifts and during meal periods, and were suffered or

19  permitted to perform work for which they were not paid. Because Plaintiff and class members

20  worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this

21  off-the-clock work qualified for overtime premium pay. Therefore, Plaintiff and class

22  members were not paid overtime wages for all of the overtime hours they actually worked.

23      75.    Defendants' failure to pay Plaintiff and class members the balance of overtime

24  compensation as required by California law, violates the provisions of California Labor Code

25  sections 510 and 1198. Pursuant to California Labor Code section 1194, Plaintiff and class

26  members are entitled to recover their unpaid overtime compensation, as well as interest, costs,

27  and attorneys' fees.

28          **SECOND CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

**Minimum Wages**

**(Against all Defendants)**

76.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

77.     At all relevant times, California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in Wage Order No. 1 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

78.     As stated, Defendants had a company-wide policy and/or practice of rounding Plaintiff's and class members' hourly clock-in and clock-out times in their timekeeping system to the nearest tenth, resulting in the failure to compensate them for all hours worked. Furthermore, as set forth above, Plaintiff and class members were required to perform work off-the-clock by attending mandatory meetings under the direction of Defendants' management, time for which they were not paid.  As also stated above, due to Defendants' policy and/or practice of understaffing while assigning heavy workloads, Plaintiff and class members were forced to forego meal periods, have their meal periods interrupted, and/or were otherwise not relieved of all duties during meal periods.

79.     Furthermore, Defendants maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations.  At all times, Defendants were in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, Defendants gave Plaintiff strict instructions to obtain drug testing and a physical

examination, and Plaintiff underwent the testing for the sole benefit of Defendants.  Plaintiff followed Defendants' instructions and spent 50 minutes total traveling to and from the medical facility designated by Defendants, and an additional 5 hours waiting at the medical facility and undergoing the requisite testing.  However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

80.    Defendants did not pay minimum wages for off-the-clock hours that Plaintiff and class members worked through that qualified for overtime premium payment.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

81.    Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code, §§ 226.7, 512(a), 516, and 1198—Meal Period Violations**

**(Against all Defendants)**

82.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

83.    At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (Cal.

1    2012).

2         84.    At all relevant times herein set forth, California Labor Code sections 226.7,

3    512(a), 516, and 1198 provide that no employer shall require an employee to work during any

4    meal period mandated by an applicable order of the IWC.

5         85.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and

6    the applicable IWC Wage Order also require employers to provide a second meal period of

7    not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an

8    employee one (1) additional hour of pay at the employee's regular rate, except that if the total

9    hours worked is no more than twelve (12) hours, the second meal period may be waived by

10   mutual consent of the employer and the employee only if the first meal period was not waived.

11        86.    During the relevant time period, as stated, Defendants had, and continue to

12   have, a company-wide policy and/or practice of understaffing while assigning heavy

13   workloads.  As a result, Plaintiff and class members would be forced to work in excess of five

14   (5) hours before taking a meal period, have their meal periods interrupted, and/or had to forgo

15   their meal periods altogether.  For example, during her employment, Plaintiff would have her

16   meal periods interrupted by her coworkers to discuss work-related matters.  Plaintiff also

17   received late meal periods on September 12, 2019 (after 5 hours and 11 minutes of work);

18   September 19, 2019 (after 5 hours and 50 minutes of work); and on September 20, 2019 (after

19   5 hours and 10 minutes of work).  Plaintiff and class members did not sign valid meal period

20   waivers on days that they were entitled to meal periods and were not relieved of all duties.

21        87.    Moreover, Defendants engaged in a company-wide practice and/or policy of

22   not paying all meal period premiums owed when compliant meal periods are not provided.

23   Because of Defendants' practices and/or policies, Plaintiff and class members have not

24   received premium pay for all missed, late, and interrupted meal periods.  As a result,

25   Defendants failed to provide Plaintiff and class members compliant meal periods in violation

26   of California Labor Code sections 226.7, 512, and 516 and failed to pay the full meal period

27   premiums due.

28        88.    Defendants' conduct violates the applicable IWC Wage Order, and California

Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

**FOURTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations**

**(Against all Defendants)**

89.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

90.    At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiff and class members' employment by Defendants.

91.    At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

92.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7, Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized and permitted.

93.     During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, Defendants' policies and/or practice of understaffing and assigning heavy workloads prevented Plaintiff and class members from being relieved of all duty in order to take compliant rest periods.  Defendants also failed to schedule rest periods, which, coupled with Defendants' failure to provide adequate rest period coverage, further led to Plaintiff and class members not being authorized and permitted to take rest periods.

94.     Furthermore, during the relevant time period, Defendants maintained a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on Defendants' premises during their rest periods.  For example, Defendants verbally told Plaintiff during her onboarding/new-hire orientation that she could not leave Defendants' premises during her rest periods.  Because Plaintiff and class members were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes.  Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.

95.     As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.  For example, throughout her employment, Plaintiff would miss her rest periods due to a lack of coverage.

96.     Defendants have also engaged in a systematic, company-wide practice and/or policy of not paying rest period premiums owed when rest periods are not authorized and permitted.  As a result, Defendants denied Plaintiff and class members rest periods and failed to pay them rest period premium wages due, in violation of Labor Code section 226.7 and the applicable IWC Wage Order.

97.     Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of

compensation for each work day that a compliant rest period was not authorized and permitted.

**FIFTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

98.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

99.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

100.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

101.    Because Defendants did not accurately record the time Plaintiff and Subclass members spent working off the clock and improperly rounded their total hours worked, Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and 226(a)(5).  For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and corresponding accurate number of work hours worked at each hourly rate in violation of section 226(a)(9).

102.    The wage statement deficiencies also include, without limitation, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; failing to list the inclusive dates of the period for which class members were paid; and/or failing to state all hours worked as a result of not recording or stating hours worked off-the-clock.

103.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, Defendants failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Plaintiff and Subclass members, in violation of section 1198.

104.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments . . . ."  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Plaintiff's and Subclass

members' total hours worked.

105.    Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon Termination**

**(Against all Defendants)**

106.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

107.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premium wages that were not timely paid to Plaintiff and those class members no longer employed by Defendants upon their termination.

108.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

109.    Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

110.    Defendants' failure to pay Plaintiff and class members who are no longer

employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

## SEVENTH CAUSE OF ACTION

### Violation of California Labor Code § 204—Failure to Timely Pay Wages During Employment

### (Against all Defendants)

111.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

112.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, and/or meal and rest period premium wages, that were not timely paid to Plaintiff and those class members.

113.    At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

114.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

115.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of

wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

116.   During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, and meal and rest period premium wages, within the time periods specified by California Labor Code section 204.

117.   Defendants' failure to pay Plaintiff and class members all wages due violates Labor Code section 204.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

## EIGHTH CAUSE OF ACTION

### Violation of California Labor Code § 2802—Unpaid Business-Related Expenses

### (Against all Defendants)

118.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

119.   At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order 1-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

120.   First, during the relevant time period, Defendants had a company-wide policy of requiring Plaintiff and class members to utilize their own personal vehicles for work purposes such as driving to off-site training sessions and new-hire orientations, but failed to

reimburse them for all costs of travel, including mileage. For example, Plaintiff drove approximately 30 miles total traveling to another one of Defendants' plants to attend new-hire orientation, attend training sessions, or complete paperwork. Although Defendants required Plaintiff and class members to utilize their own vehicles to travel to and from off-site training sessions, Defendants did not reimburse them fully for all of their travel expenses.

121. Second, Defendants also had a company-wide policy of requiring Plaintiff and class members to travel in their own personal vehicles to obtain mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage. Defendants maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. Defendants gave Plaintiff and class members strict instructions to obtain drug testing and physical examinations, and Plaintiff and class members underwent the testing and physical examinations for the sole benefit of Defendants.

122. As described above, Plaintiff followed Defendants' instructions, traveled for approximately 50 minutes roundtrip in her personal vehicle, and underwent Defendants' drug testing and physical examination, but was not reimbursed for her mileage to and from the medical facility. Although Defendants required Plaintiff and class members to undergo drug testing and/or physical examinations, Defendants failed to reimburse them for their travel expenses.

123. Defendants could have provided Plaintiff and class members with the actual tools for use on the job, such as company vehicles, or Defendants could have fully reimbursed employees for the costs of their travel expenses and mileage. Instead, Defendants passed these operating costs off onto Plaintiff and class members. At all relevant times, Plaintiff did not earn at least two (2) times the minimum wage.

124.    Defendants' company-wide policy and/or practice of passing on their operating costs to Plaintiff and class members violates California Labor Code section 2802. Defendants have intentionally and willfully failed to reimburse Plaintiff and other class members for necessary business-related expenses and costs.

125.    Plaintiff and class members are entitled to recover from Defendants their business-related expenses incurred during the course and scope of their employment, plus interest.

**NINTH CAUSE OF ACTION**

**For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

**(Against all Defendants)**

126.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

127.    California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5. Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 227.3, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802. Labor Code section 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for violations of those Labor Code sections not found in section 2699.5, including sections 246, 516, 1182.12, 6401, and 6403.

128.    Defendants' conduct, as alleged herein, violates numerous sections of the California Labor Code, including, but not limited to, the following:

        (a)    Violation of Labor Code sections 510, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay, as alleged herein;

        (b)    Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked, as alleged herein;

1       (c)     Violation of Labor Code sections 226.7, 512, 516, 1198, and the

2               applicable IWC wage order for Defendants' failure to provide Plaintiff

3               and other aggrieved employees with meal periods, as alleged herein;

4       (d)     Violation of Labor Code sections 226.7, 516, 1198, and the applicable

5               IWC wage order for Defendants' failure to authorize and permit

6               Plaintiff and other aggrieved employees to take rest periods, as alleged

7               herein;

8       (e)     Violation of Labor Code sections 226(a), 1198, and the applicable IWC

9               wage order for failure to provide accurate and complete wage statements

10              to Plaintiff and other aggrieved employees, as alleged herein;

11      (f)     Violation of Labor Code sections 1174(d), 1198, and the applicable

12              IWC wage order for failure to maintain payroll records as alleged

13              herein;

14      (g)     Violation of Labor Code sections 201, 202, and 203 for failure to pay all

15              earned wages upon termination, as alleged herein;

16      (h)     Violation of Labor Code section 204 for failure to pay all earned wages

17              during employment, as alleged herein;

18      (i)     Violation of Labor Code section 222.5 for failure to compensate

19              Plaintiff and other aggrieved employees for mandatory physical

20              examinations and/or drug testing as set forth below;

21      (j)     Violation of Labor Code section 246 for failure to provide written notice

22              of paid sick leave available, or paid time off, as set forth below;

23      (k)     Violation of Labor Code section 1198 for failure to maintain, for

24              Plaintiff and other aggrieved employees, a temperature in work areas

25              that provided reasonable comfort consistent with industry-wide

26              standards for the nature of the process and the work performed, and to

27              take all feasible means to reduce excessive heat or humidity to a degree

28              providing reasonable comfort, as set forth below;

(l)    Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred, as alleged herein; and

(m)    Violation of Labor Code sections 6401 and 6403 for failure to provide safety devices and safeguards, such as personal protective equipment, to Plaintiff and other aggrieved employees, as set forth below.

129.    At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any medical or physical examination taken.

130.    At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and/or other aggrieved employees undergo a mandatory physical examination and/or drug test, but required them to do so at their own expense. As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and other aggrieved employees, travel to a specified medical facility using their own personal vehicles to undergo physical examinations and/or drug testing. At all times, Defendants were in control of scheduling the date and time for the examinations and/or testing, selecting the provider/facility where the examinations and/or testing were to take place, and determining the scope of the examinations and/or testing.

131.    During the relevant time period, Plaintiff was instructed by Defendants to travel to a medical facility and obtain a drug test and physical examination. Plaintiff followed Defendants' instructions, traveled to the facility Defendants selected, and underwent the testing. Plaintiff was required to drive for approximately 50 minutes roundtrip to and from a medical facility selected by Defendants using her own vehicle, and spent 5 hours waiting at the medical facility and undergoing the requisite testing.

132.    However, Defendants did not compensate Plaintiff and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities.

Defendants' policy and/or practice of not paying for all costs Plaintiff and other aggrieved employees incurred obtaining mandatory drug tests and/or physical examinations violates California Labor Code section 222.5. Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

133.    California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Pursuant to California Labor Code section 246(b)(4), employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249, section 246(i) provides that an employer must provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off that an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate written statement provided on the designated pay date with the employee's wages. The penalties described in this article for a violation of this subdivision shall be in lieu of the penalties for a violation of Section 226.

134.    During the relevant time period, Defendants failed, on a company-wide basis, to provide Plaintiff and other aggrieved employees written notice on wage statements and/or other separate written statements that listed the requisite information set forth in Labor Code section 246(i). Defendants' ongoing and systematic failure to provide written notice of sick leave benefits to Plaintiff and other aggrieved employees violates California Labor Code section 246(i). Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 248.5 and/or 2699(a), (f), and (g).

135.    California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is

1    unlawful."

2        136.    California Code of Regulations, Title 8, sections 11010(15)(A) and (B) provide

3    that "[t]he temperature maintained in each work area shall provide reasonable comfort

4    consistent with industry-wide standards for the nature of the process and the work

5    performed. . . .  If excessive heat or humidity is created by the work process, the employer

6    shall take all feasible means to reduce such excessive heat or humidity to a degree providing

7    reasonable comfort."  California law requires an employer to endeavor to provide a safe and

8    healthy workplace (Cal. Code Regs., tit. 8, § 3203).  Moreover, California Labor Code section

9    6720 required the California Division of Occupational Safety and Health ("OSHA") to

10   propose an indoor heat illness standard by January 1, 2019; OSHA's draft standard, as of

11   April 22, 2019, applies its proposed regulations to "all indoor work areas where the

12   temperature equals or exceeds 82 degrees Fahrenheit when employees are present."

13       137.    Upon information and belief, Defendants violated California Labor Code

14   section 1198 and California Code of Regulations, Title 8, section 11010(15), because

15   Defendants failed to maintain a temperature in work areas that provided reasonable comfort

16   consistent with industry-wide standards for the nature of the process and the work performed

17   and failed to take all feasible means to reduce excessive heat or humidity to a degree

18   providing reasonable comfort.

19       138.    During the relevant time period, Plaintiff and other aggrieved employees were

20   subjected to excessive heat and or humidity resulting in temperatures equaling or exceeding

21   82 degrees Fahrenheit.  Defendants failed to provide Plaintiff and other aggrieved employees

22   with reasonable comfort by maintaining the indoor temperature within the range of industry

23   standards by providing adequate air conditioning, in violation of California Labor Code

24   section 1198 and IWC Wage Order 1-2001, Section 15.  For example, Plaintiff and other

25   aggrieved employees who were present on Defendants' sites on weekends were not provided

26   air conditioning and, even on weekdays, the air conditioning system was often inconsistent as

27   Defendants only utilized mobile coolers at their worksites.  Plaintiff experienced a heat stroke

28   on at least one instance from these improper work conditions.

139.    Accordingly, Defendants failed to maintain, in their work areas, a temperature providing reasonable comfort for their employees, including Plaintiff and other aggrieved employees, in violation of California Labor Code section 1198.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties, pursuant to Labor Code sections 2699(a), (f), and (g).

140.    At all times herein set forth, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

141.    Defendants, on a company-wide basis, failed to provide Plaintiff and other aggrieved employees with safety devices and safeguards such as protective gloves, face masks, and/or steel-toed boots, to keep them safe in the workplace.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including protective gloves, face masks to wear while machines were being cleaned, and steel-toed boots, Defendants failed to provide such reasonably necessary equipment to Plaintiff and other aggrieved employees to keep them safe.  For example, Defendants only provided a limited number of protective gloves and face masks on a first-come, first-serve basis; when this supply ran out, Plaintiff and other aggrieved employees simply would not have gloves or masks to wear during their shifts.

142.    Defendants' failure to provide Plaintiff and other aggrieved employees with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403. Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

**TENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200,** *et seq.* –

**Unlawful Business Practices**

**(Against all Defendants)**

143.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

144.    Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

145.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

146.    Defendants' activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, *et seq.*

147.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on the violation of any state or federal law.  In the instant case, Defendants' policies and practices have violated state law in at least the following respects:

        (a)    Requiring non-exempt, hourly paid employees, including Plaintiff and class members, to work overtime without paying them proper compensation in violation of California Labor Code sections 510 and 1198 and the applicable IWC Order, as alleged herein;

        (b)    Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Order, as alleged herein;

        (c)    Failing to provide uninterrupted meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a),

1    516, 1198, and the applicable IWC Order, as alleged herein;

2    (d)    Failing to authorize and permit Plaintiff and class members to take

3    uninterrupted rest periods in violation of California Labor Code sections

4    226.7, 516, 1198, and the applicable IWC Order, as alleged herein;

5    (e)    Failing to provide Plaintiff and class members with accurate wage

6    statements and failing to maintain accurate payroll records in violation

7    of California Labor Code sections 226(a), 1174(d), 1198, and the

8    applicable IWC Order, as alleged herein;

9    (f)    Failing timely to pay all earned wages to Plaintiff and class members in

10    violation of California Labor Code section 204 and the applicable IWC

11    Order, as alleged herein;

12    (g)    Failing to pay Plaintiff and class members the costs of mandatory

13    physical examinations and/or drug testing in violation of California

14    Labor Code section 222.5, as set forth below;

15    (h)    Failing to provide written notice of paid sick leave or paid time off

16    available to Plaintiff and class members in violation of California Labor

17    Code section 246(i), as set forth below;

18    (i)    Failing to reimburse Plaintiff and class members for all business

19    expenses necessarily incurred in violation of California Labor Code

20    sections 2802, as alleged herein; and

21    (j)    Failing to provide Plaintiff and class members with safety devices and

22    safeguards, such as personal protective equipment, in violation of

23    California Labor Code sections 6401 and 6403, as set forth below.

24    148.    At all relevant times herein, California Labor Code section 222.5 requires

25    employers to pay for the costs an employee incurs for obtaining any medical or physical

26    examination taken.

27    149.    At all times relevant herein, Defendants implemented, on a company-wide

28    basis, an employer-imposed requirement that Plaintiff and class members undergo a

mandatory physical examination and/or drug test, but required them to do so at their own expense.  As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and class members, travel to a specified medical facility using their own personal vehicles to undergo physical examinations and/or drug testing.  At all times, Defendants were in control of scheduling the date and time for the examinations and/or testing, selecting the provider/facility where the examinations and/or testing were to take place, and determining the scope of the examinations and/or testing.

150.    During the relevant time period, Plaintiff was instructed by Defendants to travel to a medical facility and obtain a drug test and physical examination.  Plaintiff followed Defendants' instructions, traveled to the facility Defendants selected, and underwent the testing.  Plaintiff was required to drive for approximately 50 minutes roundtrip to and from a medical facility selected by Defendants using her own vehicle, and spent 5 hours waiting at the medical facility and undergoing the requisite testing.

151.    However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities.  Defendants' policy and/or not paying for all costs Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug testing is in violation of California Labor Code section 222.5.

152.    California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked.  Employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment.  Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249, section 246(i) provides that an employer must provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off that an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate

written statement provided on the designated pay date with the employee's wages.  The penalties described in this article for a violation of this subdivision shall be in lieu of the penalties for a violation of Section 226.

153.    During the relevant time period, Defendants have failed, on a company-wide basis, to provide Plaintiff and class members written notice on wage statements and/or other separate written statements that listed the requisite information set forth in Labor Code section 246(i).  Defendants' ongoing and systematic failure to provide written notice of sick leave benefits to Plaintiff and class members violates California Labor Code section 246(i).

154.    At all relevant times herein, California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy.  California Labor Code Section 6401 further provides that an employer must do everything reasonably necessary to protect the life, safety, and health of its employees.  California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

155.    Defendants, on a company-wide basis, failed to provide Plaintiff and class members with safety devices and safeguards such as protective gloves, face masks, and/or steel-toed boots, to keep them safe in the workplace.  Despite the fact that Defendants required employees to wear certain personal protective equipment, including protective gloves, face masks to wear while machines were being cleaned, and steel-toed boots, Defendants failed to provide such reasonably necessary equipment to Plaintiff and class members to keep them safe.  For example, Defendants only provided a limited number of protective gloves and face masks on a first-come, first-serve basis; when this supply ran out, Plaintiff and class members simply would not have gloves or masks to wear during their shifts.  Thus, Defendants' failure to provide Plaintiff and class members with safety devices and safeguards for the workplace violates Labor Code sections 6401 and 6403.

156.    As a result of the violations of California law herein described, Defendants

unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members

have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged

herein.

157.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

Plaintiff and class members are entitled to restitution of the wages withheld and retained by

Defendants during a period that commences four years prior to the filing of this complaint; a

permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and

class members; and an award of attorneys' fees pursuant to California Code of Civil

Procedure section 1021.5 and other applicable laws; and an award of costs.

## ELEVENTH CAUSE OF ACTION

**Violation of California Business & Professions Code §§ 17200, et seq. –**

**Unfair Business Practices**

**(Against all Defendants)**

158.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

and every allegation set forth above.

159.    Defendants are "persons" as defined by California Business & Professions

Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

and/or associations.

160.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered

injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff

seeks to enforce important rights affecting the public interest within the meaning of Code of

Civil Procedure section 1021.5.

161.    Defendants' activities, namely Defendants' company-wide practice and/or

policy of not paying Plaintiff and class members all meal and rest period premium wages due

to them under Labor Code section 226.7, deprived Plaintiff and class members of the

compensation guarantee and enhanced enforcement implemented by section 226.7.  The

statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to

compensate employees, and secondarily to shape employer conduct.  *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were guaranteed to Plaintiff and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.* (Id.)

162.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice.  In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

163.    Pursuant to California Business & Professions Code sections 17200 *et seq.*, Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by section 226.7 due to Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury.

**PRAYER FOR RELIEF**

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

**Class Certification**

2.    That this case be certified as a class action;

3.    That Plaintiff be appointed as the representative of the Class and Subclass;

4.      That counsel for Plaintiff be appointed as class counsel.

**As to the First Cause of Action**

5.      That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay all overtime wages due to Plaintiff and class members;

6.      For general unpaid wages at overtime wage rates and such general and special damages as may be appropriate;

7.      For pre-judgment interest on any unpaid overtime compensation commencing from the date such amounts were due, or as otherwise provided by law;

8.      For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.      For such other and further relief as the Court may deem equitable and appropriate.

//

**As to the Second Cause of Action**

10.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiff and class members;

11.     For general unpaid wages and such general and special damages as may be appropriate;

12.     For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.     For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.     For liquidated damages pursuant to California Labor Code section 1194.2; and

15.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

16. That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198 and applicable IWC Wage Order(s) by willfully failing to provide all meal periods to Plaintiff and class members;

17. That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

18. For all actual, consequential, and incidental losses and damages, according to proof;

19. For premiums pursuant to California Labor Code section 226.7(b);

20. For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

21. For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

22. For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fourth Cause of Action**

23. That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 226.7, 516, and 1198 and applicable IWC Wage Orders by willfully failing to authorize and permit Plaintiff and class members to take all rest periods;

24. That the Court make an award to the Plaintiff and class members of one (l) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted;

25. For all actual, consequential, and incidental losses and damages, according to proof;

26. For premiums pursuant to California Labor Code section 226.7(b);

27. For pre-judgment interest on any unpaid rest period premiums from the date such amounts were due, or as otherwise provided by law;

28. For attorneys' fees pursuant to California Code of Civil Procedure section

1021.5, or as otherwise provided by law; and

29.     For such other and further relief as the Court may deem equitable and appropriate.

### As to the Fifth Cause of Action

30.     That the Court declare, adjudge and decree that Defendants violated the recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage Orders as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized wage statements thereto;

31.     For all actual, consequential, and incidental losses and damages, according to proof;

32.     For injunctive relief pursuant to California Labor Code section 226(h);

33.     For statutory penalties pursuant to California Labor Code section 226(e);

34.     For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

35.     For such other and further relief as the Court may deem equitable and appropriate.

### As to the Sixth Cause of Action

36.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, and/or meal and rest period premiums owed at the time of termination of the employment of Plaintiff and other terminated class members;

37.     For all actual, consequential and incidental losses and damages, according to proof;

38.     For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

39.     For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

40.     For attorneys' fees pursuant to California Code of Civil Procedure section

1   1021.5, or as otherwise provided by law; and

2       41.    For such other and further relief as the Court may deem equitable and

3   appropriate.

4                   **As to the Seventh Cause of Action**

5       42.    That the Court declare, adjudge and decree that Defendants violated California

6   Labor Code section 204 by willfully failing to timely pay Plaintiff and class members

7   overtime wages, minimum wages, and/or meal and rest period premiums during their

8   employment;

9       43.    For all actual, consequential and incidental losses and damages, according to

10  proof;

11      44.    For statutory penalties according to proof pursuant to California Labor Code

12  section 210;

13      45.    For pre-judgment interest on any unpaid wages from the date such amounts

14  were due, or as otherwise provided by law;

15      46.    For attorneys' fees pursuant to California Code of Civil Procedure section

16  1021.5, or as otherwise provided by law; and

17      47.    For such other and further relief as the Court may deem equitable and

18  appropriate.

19                   **As to the Eighth Cause of Action**

20      48.    That the Court declare, adjudge and decree that Defendants violated California

21  Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-

22  related expenses and costs incurred by Plaintiff and class members;

23      49.    For unpaid business-related expenses and such general and special damages as

24  may be appropriate;

25      50.    For pre-judgment interest on any unpaid business-related expenses from the

26  date such amounts were due, or as otherwise provided by law;

27      51.    For all actual, consequential, and incidental losses and damages, according to

28  proof;

1       52.      For attorneys' fees and costs pursuant to California Labor Code section

2 2802(c), or as otherwise provided by law; and

3       53.      For such other and further relief as the Court may deem equitable and

4 appropriate.

5                      **As to the Ninth Cause of Action**

6       54.      That the Court declare, adjudge and decree that Defendants violated the

7 following California Labor Code provisions as to Plaintiff and/or other aggrieved employees:

8 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and

9 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512, 516, and

10 1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and

11 permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage

12 statements and maintain accurate payroll records); 201, 202, and 203 (by failing timely to pay

13 all earned wages upon termination); 204 (by failing timely to pay all earned wages during

14 employment); 222.5 (by failing to pay the costs of mandatory drug testing and/or physical

15 examinations); 246 (by failing to provide written notice of paid sick leave or paid time off

16 available); 1198 (by failing to maintain a temperature in work areas that provide reasonable

17 comfort); 2802 (by failing to reimburse business expenses); and 6401 and 6403 (by failing to

18 provide safety devices and safeguards);

19       55.      For civil penalties pursuant to California Labor Code sections 210, 226.3,

20 248.5, 256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor

21 Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d),

22 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;

23       56.      For attorneys' fees and costs pursuant to California Labor Code section

24 2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California

25 Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d),

26 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403;

27       57.      For pre-judgment and post-judgment interest as provided by law; and

28       58.      For such other and further relief as the Court may deem equitable and

appropriate.

**As to the Tenth Cause of Action**

59.    That the Court declare, adjudge and decree that Defendants' conduct of failing to provide Plaintiff and class members all overtime wages due to them, failing to provide Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and class members all meal periods, failing to authorize and permit Plaintiff and class members to take all rest periods, failing to provide Plaintiff and class members accurate and complete wage statements, failing to maintain accurate payroll records for Plaintiff and class members, failing timely to pay Plaintiff and class members all earned wages during employment,  failing to reimburse Plaintiff and class members for the costs of mandatory drug testing and/or physical examinations, failing to provide Plaintiff and class members with written notice of paid sick leave or paid time off available, failing to reimburse Plaintiff and class members for business-related expenses, and failing to provide Plaintiff and class members with safety devices and safeguards, constitutes an unlawful business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

60.    For restitution of unpaid wages to Plaintiff and all class members and prejudgment interest from the day such amounts were due and payable;

61.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200 *et seq.*;

62.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5; and

63.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Eleventh Cause of Action**

64.    That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes

1  an unfair business practice in violation of California Business and Professions Code sections

2  17200, *et seq.*;

3      65.    For restitution of the statutory benefits under section 226.7 unfairly withheld

4  from Plaintiff and class members and prejudgment interest from the day such amounts were

5  due and payable;

6      66.    For the appointment of a receiver to receive, manage and distribute any and all

7  funds disgorged from Defendants and determined to have been wrongfully acquired by

8  Defendants as a result of violations of California Business & Professions Code sections 17200

9  *et seq.*;

10      67.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

11  California Code of Civil Procedure section 1021.5;

12      68.    For pre-judgment and post-judgment interest as provided by law; and

13      69.    For such other and further relief as the Court may deem equitable and

14  appropriate.

15

16  Dated: October 2, 2020                Respectfully submitted,

17                                        Capstone Law APC

18

19                                        By:

20                                        Robert Drexler
                                          Molly DeSario
21                                        Jonathan Lee

22                                        Attorneys for Plaintiff Suavecita Bernal

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

Exhibit 1

# Capstone
## LAW APC

1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

MAO SHIOKURA
310.712.8030 Direct
Mao.Shiokura@capstonelawyers.com

July 10, 2020

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/266)

Subject:       *Suavecita Bernal v. Graham Packaging PET Technologies Inc., et al.*

Dear PAGA Administrator:

This office represents Suavecita Bernal in connection with her claims under the California Labor
Code. Ms. Bernal was an employee of GRAHAM PACKAGING PET TECHNOLOGIES INC.;
GRAHAM PACKAGING COMPANY, L.P.; GRAHAM PACKAGING COMPANY, INC.; and/or
GEC PACKAGING TECHNOLOGIES LLC. For the purpose of this letter, Ms. Bernal collectively
refers to these entities as "GPPT."

The employers may be contacted directly at the addresses below:

GRAHAM PACKAGING PET
TECHNOLOGIES INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

GRAHAM PACKAGING COMPANY, L.P.
700 INDIAN SPRINGS DR STE 100
LANCASTER PA 17601

GRAHAM PACKAGING COMPANY, INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

GEC PACKAGING TECHNOLOGIES LLC
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

Ms. Bernal intends to seek civil penalties, attorney's fees, costs, and other available relief for
violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the
Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Bernal seeks relief on behalf of
herself, the State of California, and other persons who are or were employed by GPPT as a non-
exempt, hourly paid employee in California and who received at least one wage statement
("aggrieved employees"). This letter is sent in compliance with the notice and reporting
requirements of California Labor Code section 2699.3.

GPPT employed Ms. Bernal as an hourly paid, non-exempt employee from approximately August to
October 2019. Ms. Bernal worked for GPPT as a Packaging Specialist at its location in Modesto,

1

California.  During her employment, Ms. Bernal typically worked eight (8) hours or more per day, and five (5) days per week.  At the time Ms. Bernal's employment with GPPT ended, she earned approximately $15.47 per hour.  Her job duties included, without limitation, operating heavy machinery, handling defective packaging, assembling and stacking packages, cleaning and maintaining machines, and logging and reporting containers.

GPPT committed one or more of the following Labor Code violations against Ms. Bernal, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

## GPPT's Company-Wide and Uniform Payroll and HR Practices

GRAHAM PACKAGING PET TECHNOLOGIES INC. and GRAHAM PACKAGING COMPANY, INC. are Delaware corporations, while GRAHAM PACKAGING COMPANY, L.P. and GEC PACKAGING TECHNOLOGIES LLC are a Delaware limited partnership and a Delaware limited liability company, respectively.  GPPT is a global manufacturer of customizable packaging solutions and operates several manufacturing plants in California.  Upon information and belief, GPPT maintains a single, centralized Human Resources (HR) department at its corporate headquarters in Lancaster, Pennsylvania, for all non-exempt, hourly paid employees working for GPPT in California, including Ms. Bernal and other aggrieved employees.  At all relevant times, GPPT issued and maintained uniform, standardized scheduling and timekeeping practices and procedures for all non-exempt, hourly paid employees in California, including Ms. Bernal and other aggrieved employees, regardless of its location or position.

Upon information and belief, GPPT maintains a centralized Payroll department at its corporate headquarters in Lancaster, Pennsylvania, which processes payroll for all non-exempt, hourly paid employees working for GPPT in California, including Ms. Bernal and other aggrieved employees.  Further, GPPT issues the same formatted wage statements in the same manner for all non-exempt, hourly paid employees working in California, including Ms. Bernal and other aggrieved employees, irrespective of their location, position, or manner in which each employee's employment ended.  In other words, GPPT utilized the same methods and formulas when calculating wages due to Ms. Bernal and other aggrieved employees in California.

## Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.  The applicable IWC Wage Order further provides that employers are required to pay employees working more than twelve (12) hours in a day overtime compensation at a rate of

---

[1] These facts, theories, and claims are based on Ms. Bernal's experience and counsel's review of those records currently available relating to Ms. Bernal's employment.  Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations).  Thus, Ms. Bernal reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including nondiscretionary bonuses and incentive pay.

GPPT willfully failed to pay all overtime wages owed to Ms. Bernal and other aggrieved employees. During the relevant time period, Ms. Bernal and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, GPPT had, and continues to have, a company-wide policy and/or practice of improperly rounding employees' clock-in and clock-out times in their timekeeping system to the nearest tenth (0.1) of an hour. GPPT's rounding policy resulted in the failure to compensate Ms. Bernal and other aggrieved employees fully for all hours worked, causing Ms. Bernal and other aggrieved employees to not be paid overtime wages for all of the overtime hours they actually worked. GPPT's policy of rounding is unfair and has, over time, resulted in the underpayment of wages to Ms. Bernal and other aggrieved employees. To the extent GPPT's rounding policy has taken away time worked that was eligible for overtime, Ms. Bernal and other aggrieved employees were denied overtime pay for all hours worked.

Second, GPPT had a company-wide practice and/or policy of requiring Ms. Bernal and other aggrieved employees to perform work-related tasks while off-the-clock, but prevented them from accounting for and recording this time in the timekeeping system. For example, Ms. Bernal and other aggrieved employees were required to attend mandatory meetings lasting 5-10 minutes prior to their shifts, but were prevented from clocking in until their scheduled shift start-time, upon threat of discipline. Ms. Bernal would report to work 10 minutes prior to the start of her scheduled shift, but was not permitted clock in until her scheduled shift start-time, after the meeting was completed. Additionally, GPPT required Ms. Bernal and other aggrieved employees to attend off-site training sessions, such as new-hire orientations, but did not compensate them for their time spent traveling to these training sessions. For example, after clocking out, Ms. Bernal spent an hour traveling to another one of GPPT's plants to attend new-hire orientation, attend training sessions, or complete paperwork. Thus, GPPT failed to track all of this time spent working before clocking in or after clocking out, and Ms. Bernal and other aggrieved employees received no compensation for this time.

Third, during the relevant period, GPPT had, and continues to have, a company-wide policy and/or practice of understaffing its worksites while assigning heavy workloads, resulting in a failure to provide Ms. Bernal and other aggrieved employees with adequate meal period coverage. As a result of this lack of meal period coverage, Ms. Bernal and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. For example, Ms. Bernal and other aggrieved employees would have their meal periods interrupted to complete such work-related tasks as responding to questions about job duties from coworkers. Furthermore, GPPT had a policy and/or practice of requiring that other aggrieved employees, such as machine operators and forklift operators, carry a company-issued radio at all times in order to respond to calls from supervisors and management, even during unpaid meal periods. GPPT's supervisors and management contacted other aggrieved employees on their radios during their meal periods. Thus, Ms. Bernal and other aggrieved employees missed and/or had meal periods interrupted in order to complete their assigned workloads. GPPT did not pay Ms. Bernal and other aggrieved employees for the time they continued to perform tasks during meal periods.

3

GPPT knew or should have known that as a result of these company-wide practices and/or policies, Ms. Bernal and other aggrieved employees were working before and after their shifts and/or during their meal periods, and were suffered or permitted to perform work for which they were not paid. Because Ms. Bernal and other aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Ms. Bernal and other aggrieved employees were not paid overtime wages for all of the overtime hours they actually worked.

Furthermore, GPPT did not pay other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, GPPT paid other aggrieved employees shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration. However, in violation of the California Labor Code, GPPT failed to incorporate all compensation, including, but not limited to, shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when other aggrieved employees worked overtime and received these other forms of pay, GPPT failed to pay all overtime wages by paying a lower overtime rate than required.

Ms. Bernal and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined in Wage Order No. 1 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11010(2)(G) (defining "Hours Worked").

As set forth above, GPPT's company-wide policy and/or practice of rounding Ms. Bernal's and other aggrieved employees' hourly clock-in and clock-out times in their timekeeping system to the nearest tenth resulted in the failure to compensate them for all hours worked. Furthermore, as stated, Ms. Bernal and other aggrieved employees were required to perform work off-the-clock attending mandatory meetings under the direction of GPPT's management, time for which they were not paid. As also stated above, due to GPPT's policy and/or practice of understaffing while assigning heavy workloads, combined with its requirement that certain employees carry their radios at all times, Ms. Bernal and/or other aggrieved employees were forced to forego meal periods, have their meal periods interrupted, and/or were otherwise not relieved of all duties during meal periods.

Furthermore, GPPT maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations. At all times, GPPT was in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. For example, GPPT gave Ms. Bernal strict instructions to obtain drug testing and a physical examination, and Ms. Bernal underwent the testing for the sole benefit of GPPT. Ms. Bernal followed GPPT's instructions and spent 50 minutes total traveling to

and from the medical facility designated by GPPT, and an additional five (5) hours waiting at the medical facility and undergoing the requisite testing.  However, GPPT did not compensate Ms. Bernal and other aggrieved employees for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

Thus, GPPT did not pay at least minimum wages for off-the-clock hours that qualified for overtime premium payment.  Also, to the extent that these off-the-clock hours did not qualify for overtime premium payment, GPPT did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, and 1197.1.  Accordingly, GPPT regularly failed to pay at least minimum wages to Ms. Bernal and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Ms. Bernal and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 – Failure to Provide Meal Periods**

California Labor Code sections 226.7, 512(a), 516, 1198 and the applicable IWC Wage Order require employers to provide meal and rest period and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided.  Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012).  Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

As stated, GPPT had, and continues to have, a company-wide policy and/or practice of understaffing while simultaneously assigning heavy workloads.  Moreover, as stated above, GPPT's requirement that certain employees, such as machine operators and forklift operators, carry radios at all times prevented other aggrieved employees from taking compliant meal periods.  As a result, Ms. Bernal and/or other aggrieved employees had to work through part or all of their meal periods, have their meal periods interrupted, and/or wait extended periods of time before taking meal periods.  For example, during her employment, Ms. Bernal would have her meal periods interrupted by her coworkers to discuss work-related matters.  Ms. Bernal also received late meal periods on September 12, 2019 (after 5 hours and 11 minutes of work); September 19, 2019 (after 5 hours and 50 minutes of work); and on September 20, 2019 (after 5 hours and 10 minutes of work).

In addition, during the relevant time period, GPPT did not provide other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.  Ms.

Bernal and other aggrieved employees did not sign valid meal period waivers on days that they were entitled to meal periods and were not relieved of all duties.

As a result of GPPT's practices and/or policies, Ms. Bernal and other aggrieved employees were forced to work in excess of five (5) hours before taking a meal period and, at times, had their meal periods interrupted, and/or had to forgo their meal periods altogether. GPPT knew or should have known that as a result of its policies, Ms. Bernal and other aggrieved employees were not actually relieved of all duties to take timely, uninterrupted meal periods. GPPT further knew or should have known that it did not pay Ms. Bernal and other aggrieved employees meal period premium wages when meal periods were missed, late, short, and/or interrupted.

Furthermore, GPPT engaged in a company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods are not provided. Because of this practice and/or policy, Ms. Bernal and other aggrieved employees have not received premium pay for missed, interrupted, or late meal periods. Alternatively, to the extent that GPPT did pay other aggrieved employees premium pay for missed, late, and interrupted meal periods, GPPT did not pay other aggrieved employees at the correct rate of pay for premium wages because GPPT systematically failed to include all forms of compensation, such as shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, GPPT failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), 516, and 1198. Ms. Bernal and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226.7, 516, and 1198 – Failure to Authorize and Permit Rest Periods

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant time period, GPPT regularly failed to authorize and permit Ms. Bernal and other aggrieved employees to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof. As with meal periods, GPPT's policies and/or practice of understaffing and assigning heavy workloads and requirement that certain employees carry radios at all times, prevented Ms. Bernal and/or other aggrieved employees from being relieved of all duty in order to take compliant rest periods. GPPT also failed to schedule rest periods, which, coupled with GPPT's

6

failure to provide adequate rest period coverage, further led to Ms. Bernal and other aggrieved employees not being authorized and permitted to take rest periods.

Furthermore, during the relevant time period, GPPT maintained a company-wide on-premises rest period policy, which mandated that Ms. Bernal and other aggrieved employees remain on GPPT's premises during their rest periods.  For example, GPPT verbally told Ms. Bernal during her onboarding/new-hire orientation that she could not leave GPPT's premises during her rest periods. Because Ms. Bernal and other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes.  Thus, GPPT effectively maintained control over Ms. Bernal and other aggrieved employees during rest periods.

As a result, Ms. Bernal and other aggrieved employees would work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without being permitted and authorized to take all ten (10) minute rest periods to which they were entitled.  For example, throughout her employment, Ms. Bernal would miss her rest periods due to a lack of coverage.

GPPT also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and permitted.  Alternatively, to the extent that GPPT did pay other aggrieved employees one (1) additional hour of premium pay for missed rest periods, GPPT did not pay other aggrieved employees at the correct rate of pay for premium wages because GPPT failed to include all forms of compensation, such as shift differential pay, incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, in the regular rate of pay.

Accordingly, GPPT failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7, 516, and 1198.  Ms. Bernal and other aggrieved employees are entitled to civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records.  GPPT has not provided Ms. Bernal and other aggrieved employees with properly itemized wage statements.  Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000.  Further, Labor Code section 226.3 provides that any employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per employee per violation in an initial citation and $1,000 per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage statement or fails to keep the required records pursuant to Section 226(a).

During the relevant time period, GPPT has knowingly and intentionally provided Ms. Bernal and other aggrieved employees with uniform, incomplete, and inaccurate wage statements.  For example, GPPT issued uniform wage statements to Ms. Bernal and other aggrieved employees that fail to correctly list: gross wages earned; total hours worked; net wages earned; the name of the legal entity

7

that is the employer; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, GPPT violated sections 226(a)(1), 226(a)(2), 226(a)(5), 226(a)(8), and 226(a)(9).

First, because GPPT did not record the time Ms. Bernal and other aggrieved employees spent working off-the-clock and improperly rounded their total hours worked, GPPT did not list the correct amount of gross wages and net wages earned by Ms. Bernal and other aggrieved employees in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, GPPT failed to accurately list the total number of hours worked by Ms. Bernal and other aggrieved employees, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

Second, because GPPT did not calculate other aggrieved employees' regular rate of pay correctly for purposes of paying overtime, GPPT did not list the correct amount of gross wages in compliance with section 226(a)(1). For the same reason, GPPT also failed to list the correct amount of net wages in violation of section 226(a)(5). GPPT also failed to correctly list all applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and correct rates of pay for meal and rest premium wages, in violation of section 226(a)(9).

Third, and separate from these violations, GPPT issued uniform wage statements to Ms. Bernal and other aggrieved employees that fail to list the correct name of the legal entity of the actual employer in violation of Labor Code section 226(a)(8). The purpose of section 226(a)(8) is to provide California employees with transparency as to the true identity of their employer, to allow the employee to contact their employer during employment in the future for various reasons, including filing an administrative claim, judicial claim, or other action to seek relief against their employer, obtain unemployment benefits, etc. Ms. Bernal's wage statements list the entity "GRAHAM PACKAGING PET TECHNOLOGIES" at the address "700 INDIAN SPRINGS DR SUITE 100, LANCASTER, PA 17601," but, according to the California Secretary of State's website, there is no such entity by that name at that address. However, a similarly named entity, "GRAHAM PACKAGING PET TECHNOLOGIES **INC.**" is listed on the California Secretary of State's website with the same or similar address. Adding to the confusion, GPPT issued a Wage Theft Notice to Ms. Bernal and other aggrieved employees that indicates that their employer may be a different entity, "Graham Packaging Company." *See example paystub below.*



The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to

list all deductions; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the address of the legal entity that is the employer; failing to list the inclusive dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall … [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments…"  Labor Code section 1174.5 provides that employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as required by section 1174(d).  During the relevant time period, and in violation of Labor Code section 1174(d), GPPT willfully failed to maintain accurate payroll records for Ms. Bernal and other aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked and improperly rounding Ms. Bernal's and other aggrieved employees' total hours worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, GPPT failed, on a company-wide basis, to keep accurate records of work period and meal period start and stop times for Ms. Bernal and other aggrieved employees, in violation of section 1198.  Furthermore, in light of GPPT's failure to provide other aggrieved employees with second 30-minute meal periods to which they were entitled, GPPT kept no records of meal start and end times for second meal periods.

Because GPPT failed to provide the correct net and gross wages earned, applicable rates of pay, and number of total hours worked on wage statements, Ms. Bernal and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full.  Instead, Ms. Bernal and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Bernal and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226.3, 1174.5, and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment</u>**

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon

termination of an employee, are due and payable between the 1st and the 10th day of the following month.  California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, GPPT failed to pay Ms. Bernal and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, within any time period specified by California Labor Code section 204.

Ms. Bernal and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code §§ 201, 202, and 203 – Failure to Timely Pay Final Wages Upon Termination</u>**

California Labor Code sections 201, 202, and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

GPPT willfully failed to pay Ms. Bernal and other aggrieved employees who are no longer employed by GPPT all their earned wages, including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premium wages, either at the time of discharge, or within seventy-two (72) hours of their leaving GPPT's employ in violation of California Labor Code sections 201, 202, and 203.

Ms. Bernal and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**<u>Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing</u>**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, GPPT implemented, on a company-wide basis, an employer-imposed requirement that Ms. Bernal and other aggrieved employees undergo a mandatory physical examination and/or drug test, upon hiring, but required them to do so at their own expense.  As stated, GPPT had a company-wide policy requiring that all employees travel to a specified medical facility using their own personal vehicles to undergo physical examinations and/or drug testing.  At all times, GPPT was in control of scheduling the date and time for the examination and/or testing, selecting the provider/facility where the examination and/or testing was to take place, and determining the scope of the examination and/or testing.

10

For example, Ms. Bernal was instructed by GPPT to travel to a medical facility and obtain a drug test and physical examination. Ms. Bernal followed GPPT's instructions, traveled to the facility GPPT selected, and underwent the testing. Ms. Bernal was required to drive for approximately 50 minutes roundtrip to and from a medical facility selected by GPPT using her own vehicle, and spent five (5) hours waiting at the medical facility and undergoing the requisite testing.

However, GPPT did not compensate Ms. Bernal and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities. GPPT's policy and/or not paying for all costs Ms. Bernal and other aggrieved employees incurred obtaining mandatory physical examinations and/or drug testing is in violation of California Labor Code section 222.5.

Ms. Bernal and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### Violation of California Labor Code § 246 – Failure to Provide Written Notice of Paid Sick Leave Benefits

California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249, section 246(i) provides that an employer must provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off that an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate written statement provided on the designated pay date with the employee's wages. The penalties described in this article for a violation of this subdivision shall be in lieu of the penalties for a violation of Section 226.

During the relevant time period, GPPT failed to provide Ms. Bernal and other aggrieved employees written notice on wage statements and/or other separate written statements that list the requisite information set forth in Labor Code section 246(i). GPPT's ongoing and systematic failure to provide written notice of sick leave benefits to Ms. Bernal and other aggrieved employees violates California Labor Code section 246(i).

Ms. Bernal and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11010 Subdivision 15 – Failure to Maintain Work Temperature Providing Reasonable Comfort

California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

11

California Code of Regulations, Title 8, sections 11010(15)(A) and (B) provide that "[t]he temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed. . . .  If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort."  California law requires an employer to endeavor to provide a safe and healthy workplace (Cal. Code Regs., tit. 8, § 3203).  Moreover, California Labor Code section 6720 required the California Division of Occupational Safety and Health ("OSHA") to propose an indoor heat illness standard by January 1, 2019; OSHA's draft standard, as of April 22, 2019, applies its proposed regulations to "all indoor work areas where the temperature equals or exceeds 82 degrees Fahrenheit when employees are present."

Upon information and belief, GPPT violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11010(15), because GPPT failed to maintain a temperature in work areas that provided reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed and failed to take all feasible means to reduce excessive heat or humidity to a degree providing reasonable comfort.

During the relevant time period, Ms. Bernal and other aggrieved employees were subjected to excessive heat and or humidity resulting in temperatures equaling or exceeding 82 degrees Fahrenheit.  GPPT failed to provide Ms. Bernal and other aggrieved employees with reasonable comfort by maintaining the indoor temperature within the range of industry standards by providing adequate air conditioning, in violation of California Labor Code section 1198 and IWC Wage Order 1-2001, Section 15.  For example, Ms. Bernal and other aggrieved employees who were present on GPPT's sites on weekends were not provided air conditioning and, even on weekdays, the air conditioning system was often inconsistent as GPPT only utilized mobile coolers at its worksites.  Ms. Bernal experienced a heat stroke on at least one instance from these improper work conditions.  Accordingly, GPPT failed to maintain, in its work areas, a temperature providing reasonable comfort for its employees, including Ms. Bernal and other aggrieved employees, in violation of California Labor Code section 1198.

Ms. Bernal and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### Violation of California Labor Code § 2802 – Unreimbursed Business Expenses

California Labor Code section 2802 requires employers to pay for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

First, during the relevant time period, GPPT had a company-wide policy of requiring Ms. Bernal and other aggrieved employees to utilize their own personal vehicles for work purposes such as driving to off-site training sessions and new-hire orientations, but failed to reimburse them for all costs of

travel, including mileage. For example, Ms. Bernal drove approximately 30 miles total traveling to another one of GPPT's plants to attend new-hire orientation, attend training sessions, and/or complete paperwork. Although GPPT required Ms. Bernal and other aggrieved employees to utilize their own vehicles to travel to and from off-site training sessions, GPPT did not reimburse them fully for all of their travel expenses.

Second, GPPT had a company-wide policy of requiring Ms. Bernal and other aggrieved employees to travel in their own personal vehicles to obtain mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage. GPPT maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations. At all times, GPPT was in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. GPPT gave Ms. Bernal and other aggrieved employees strict instructions to obtain drug testing and physical examinations, and Ms. Bernal and other aggrieved employees underwent the testing and physical examinations for the sole benefit of GPPT. For example, Ms. Bernal followed GPPT's instructions, traveled for approximately 50 minutes roundtrip in her personal vehicle, and underwent GPPT's drug testing, but was not reimbursed for their mileage to and from the medical facility. Although GPPT required Ms. Bernal and other aggrieved employees to undergo drug testing, GPPT never reimbursed them for all of their travel expenses.

Third, on a company-wide basis, mandated that Ms. Bernal and other aggrieved employees purchase special safety shoes such as steel-toed boots, which they were required to wear while at work. Ms. Bernal and/or other aggrieved employees purchased steel-toed boots to wear inside GPPT's facilities, but were not reimbursed fully for these costs.

GPPT could have provided Ms. Bernal and/or other aggrieved employees with the actual tools for use on the job, such as steel-toed boots or company vehicles, or GPPT could have fully reimbursed employees for the costs of steel-toed boots, travel expenses, and mileage. Instead, GPPT passed these operating costs off onto Ms. Bernal and other aggrieved employees. At all relevant times, Ms. Bernal did not earn at least two (2) times the minimum wage.

Thus, GPPT had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred in violation of California Labor Code section 2802. Ms. Bernal and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

### Violation of California Labor Code §§ 6401 and 6403 – Failure to Provide Safety Devices and Safeguards

California Labor Code section 6401 provides that employers must furnish and use safety devices and safeguards, and adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render the employment and place of employment safe and healthy. California Labor Code Section 6401 further provides that an employer must to everything reasonably necessary to protect the life, safety and health of its employees. California Labor Code section 6403(a) requires that employers provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.

GPPT, on a company-wide basis, failed to provide Ms. Bernal and other aggrieved employees with safety devices and safeguards such as protective gloves, face masks, and/or steel-toed boots, to keep them safe in the workplace. Despite the fact that GPPT required employees to wear certain personal protective equipment, including protective gloves and face masks to wear while machines were being cleaned, and steel-toed boots, GPPT failed to provide such reasonably necessary equipment to Ms. Bernal and other aggrieved employees to keep them safe. For example, GPPT only provided a limited number of protective gloves and face masks on a first-come, first-serve basis; when this supply ran out, Ms. Bernal and other aggrieved employees simply would not have gloves or masks to wear during their shifts.

GPPT's failure to provide Ms. Bernal and other aggrieved employees with safety devices and safeguards, including basic personal protective equipment, for the workplace violates Labor Code sections 6401 and 6403. Ms. Bernal and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 2699(a), (f)-(g).

**California Labor Code § 558(a)**

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid . . . . (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid . . . ." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." GPPT, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Bernal's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Bernal seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Bernal, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against GPPT for violations of California Labor Code sections 201, 202, 203, 204, 222.5, 226(a), 226.7, 246, 510, 512(a), 516, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, 6401, and 6403.

Therefore, on behalf of all aggrieved employees, Ms. Bernal seeks all applicable civil penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

> Mao Shiokura
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 556-4811

Best Regards,

Mao Shiokura

Copy: GRAHAM PACKAGING PET TECHNOLOGIES INC. (via U.S. Certified Mail); GRAHAM PACKAGING COMPANY, L.P. (via U.S. Certified Mail); GRAHAM PACKAGING COMPANY, INC. (via U.S. Certified Mail); GEC PACKAGING TECHNOLOGIES LLC (via U.S. Certified Mail)



PITNEY BOWES

$007.930

02 1P
0006944025 JUN 05 2020
MAILED FROM ZIP CODE 90067

UNITED STATES POSTAGE

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2 and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GRAHAM PACKAGING PET
TECHNOLOGIES INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 08

2. Article Number (Transfer from service label)
7019 2280 0000 7398 7180

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    □ Agent
                                     □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature                □ Priority Mail Express®
□ Adult Signature Restricted Delivery  □ Registered Mail™
☑ Certified Mail®                □ Registered Mail Restricted Delivery
□ Certified Mail Restricted Delivery   □ Return Receipt for Merchandise
□ Collect on Delivery            □ Signature Confirmation™
□ Collect on Delivery Restricted Delivery  □ Signature Confirmation Restricted Delivery
  red Mail
  red Mail Restricted Delivery
  r $500)

Domestic Return Receipt

CERTIFIED MAIL

7019 2280 0000 7398 7180

GRAHAM PACKAGING PET TECHNOLOGIES INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

stone
LAW APC
ury Park East, Ste 1000
es, CA 90067

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.50
Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.80
□ Return Receipt (electronic)      $
□ Certified Mail Restricted Delivery  $
□ Adult Signature Required         $
□ Adult Signature Restricted Delivery $
Postage
$ 1.63
Total Postage and Fees
$ 7.93

Postmark
Here

Bernal v. Graham
Packaging PET
Technologies, Inc.

Sent To
GRAHAM PACKAGING PET
TECHNOLOGIES INC.
Street and Apt. No., or PO Box No.
700 INDIAN SPRINGS DRIVE, SUITE 100
City, State, ZIP+4®
LANCASTER PA 17601

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions



| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)* C. Date of Delivery |
| 1. Article Addressed to:<br><br>GRAHAM PACKAGING COMPANY, L.P.<br>700 INDIAN SPRINGS DR STE 100<br>LANCASTER PA 17601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |

9590 9403 0424 5163 3665 39

| 3. Service Type | |
|---|---|
| ☐ Adult Signature | ☐ Priority Mail Express® |
| ☐ Adult Signature Restricted Delivery | ☐ Registered Mail™ |
| ☑ Certified Mail® | ☐ Registered Mail Restricted Delivery |
| ☐ Certified Mail Restricted Delivery | ☐ Return Receipt for Merchandise |
| ☐ Collect on Delivery | ☐ Signature Confirmation™ |
| ☐ Collect on Delivery Restricted Delivery | ☐ Signature Confirmation Restricted Delivery |
| ☐ Insured Mail | |
| ☐ Insured Mail Restricted Delivery (over $500) | |

2. Article Number *(Transfer from service label)*

7019 2280 0000 7398 7197

PS Form 3811, April 2015 PSN 7530-02-000-9053     Domestic Return Receipt



CERTIFIED MAIL®

7019 2280 0000 7398 7197

GRAHAM PACKAGING COMPANY, L.P.
700 INDIAN SPRINGS DR STE 100
LANCASTER PA 17601



stone
LAW APC
ntury Park East, Ste 1000
es, CA 90067

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy) $ 2.80
☐ Return Receipt (electronic) $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Bernal v. Graham
Packaging
Company, L.P.

Postage
$ 1.63

Total Postage and Fees
$ 7.93

Sent To
GRAHAM PACKAGING COMPANY, L.P.
Street and Apt. No., or PO Box No.
700 INDIAN SPRINGS DR STE 100
City, State, ZIP+4®
LANCASTER PA 17601

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions



$007.930
PITNEY BOWES

02 1P
0004644025  JUN 05 20
MAILED FROM ZIP CODE 9002

UNITED STATES POSTAGE





CERTIFIED MAIL

7019 2280 0000 7398 7203

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GRAHAM PACKAGING COMPANY, INC.

700 INDIAN SPRINGS DRIVE, SUITE 100

LANCASTER PA 17601

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9403 0424 5163 3665 22

2. Article Number (Transfer from service label)

7019 2280 0000 7398 7203

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ured Mail
☐ ___ured Mail Restricted Delivery
   ($500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

GRAHAM PACKAGING COMPANY, INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$ 3.50

Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)         $ 2.80
☐ Return Receipt (electronic)       $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required          $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Bernal v. Graham
Packaging
Company, Inc.

Postage
$ 1.83

Total Postage and Fees
$ 7.93

Sent To

Street and Apt. No., or PO Box No.

City, State, ZIP+4®

GRAHAM PACKAGING COMPANY, INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

...tone
___ LAW APC
...ury Park East, Ste 1000
...es, CA 90067



USPS CERTIFIED MAIL

PITNEY BOWES
$007.930
02 1P
00069440025 JUN 05 2020
MAILED FROM ZIP CODE 90067

UNITED STATES POSTAGE

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse
  so that we can return the card to you.
- Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

GEC PACKAGING TECHNOLOGIES LLC
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 15

2. Article Number (Transfer from service label)

7019 2280 0000 7398 7432

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee
B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
  (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

CERTIFIED MAIL

7019 2280 0000 7398 7432

GEC PACKAGING TECHNOLOGIES LLC
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

stone
LAW APC
...tury Park East, Ste 1000
...les, CA 90067

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

**OFFICIAL USE**

Certified Mail Fee
$ 3.50
Extra Services & Fees (check box, add fee as appropriate)
☑ Return Receipt (hardcopy)        $ 2.50
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$ 1.63
Total Postage and Fees
$ 7.93

Postmark
Here

Bernal V. GEC
Packaging
Technologies, LLC

Sent To
GEC PACKAGING TECHNOLOGIES LLC
Street and Apt. No., or PO Box No.
700 INDIAN SPRINGS DRIVE, SUITE 100
City, State, ZIP+4®
LANCASTER PA 17601

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GRAHAM PACKAGING COMPANY, L.P.
700 INDIAN SPRINGS DR STE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 39

2. Article Number *(Transfer from service label)*

7019 2280 0000 7398 7197

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X D. TUTINO

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

COU-19   6#111   7-17-20

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GRAHAM PACKAGING PET
TECHNOLOGIES INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 08

2. Article Number *(Transfer from service label)*

7019 2280 0000 7398 7180

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ). TUTENO
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

GOU-19 ).6 #/11          7-17-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ red Mail
☐ red Mail Restricted Delivery
  r $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GEC PACKAGING TECHNOLOGIES LLC
700 INDIAN SPRING DRIVE, SUITE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 15

2. Article Number (Transfer from service label)

7019 2280 0000 7398 7432

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X D. TOTINO
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

COV-19 #1106   7·17·20

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053   Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

GRAHAM PACKAGING COMPANY, INC.
700 INDIAN SPRINGS DRIVE, SUITE 100
LANCASTER PA 17601

9590 9403 0424 5163 3665 22

2. Article Number (Transfer from service label)

7019 2280 0000 7398 7203

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X J. TUTINO

☐ Agent
☐ Addressee

B. Received by (Printed Name)

COU-19 DG #11

C. Date of Delivery

7-17-20

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ured Mail
☐ ured Mail Restricted Delivery
   er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053

Domestic Return Receipt